**WHITESIDE et al. v. UTTERSON.**

No. 9785.

Court of Civil Appeals of Texas. Austin.

April 6, 1949.

Rehearing Denied April 27, 1949.

Gormley & Ragsdale, by Jerome T. Ragsdale, all of Dallas, for appellants.

Whitaker, Turpin, Kerr, Smith & Brooks, by Richard S. Brooks, all of Midland, for appellee.

HUGHES, Justice.

This is an action of trespass to try title involving forty acres of land in Coke County and being the SW/4 of the SE/4 of Section 287, Block 1–A, H. & T. C. Ry. Co.

Appellee, Mrs. G. B. Utterson, undisputed owner of the record title, was sued by appellants Mrs. Lou Whiteside, surviving wife of Rufus Whiteside, and the Whiteside children.

Appellants base their claim to title upon compliance with the requirements of the ten-year statute of limitation.

Trial was before a jury which made the following findings:

(a) That the land in suit was enclosed by a fence with less than 5,000 acres of land belonging to or claimed by appellants and their predecessors in title; (b) that appellants had had adverse and peaceable possession of such lands for a period of ten years, Rufus Whiteside and appellants claiming the land as their own; and (c) that Rufus Whiteside began claiming such land as his own in 1936 and appellants in 1942.

Motions for judgment were filed by all parties. Appellants' motion was for judgment upon the verdict of the jury. Appellee's motion was for judgment, notwithstanding the verdict of the jury, and to disregard certain issues found by the jury and then for judgment.

The court granted appellee's motion and rendered judgment that appellants take nothing by their suit.

The substance of appellee's motion for judgment is contained in two findings and conclusions made by the trial court and set out in its judgment, as follows:

"1. That the SW/4 of the SE/4 of Section 287, Block 1–A, H. & T. C. Ry. Co. Surveys, Coke County, Texas, was at all pertinent times included and enclosed with more than 5000 acres of land owned or claimed by the plaintiffs, and their predecessor in title, by reason of the fact that the external perimeter of the premises so owned or claimed and enclosed by plaintiffs and their predecessors in title at all times included more than 5000 acres, and that cross fences, not segregating the premises in controversy but subdividing an area otherwise consisting of more than 5000 acres into smaller subdivisions, are legally insufficient to reduce the enclosure contemplated by Art. 5512, Texas Revised Civil Statutes, to one of less than 5000 acres; and

"2. That there was no evidence in the record showing peaceable and adverse possession of the SW/4 of the SE/4 of said Section 287 for any ascertainable period of time after the year 1939, and that the jury could not, under the record, have found adverse possession of ten years without including a portion of the period since 1939, because the jury had found that the possession of plaintiffs', predecessor in title, Rufus Whiteside, was not hostile to the record title prior to 1936."

Appellee adopts these conclusions as being correct and upon this premise seeks an affirmance of the judgment appealed from

and appellants attack them as being legally or factually incorrect, and in addition contend that the court should have granted them an instructed verdict.

We will discuss and determine the issues raised.

Considering the first conclusion of the trial court, set out above, appellee does not question the jury finding that the forty acres involved in this suit was enclosed by a fence in a pasture containing less than 5000 acres of land, but she contends, as held by the court below, that the external perimeter or outside fence is the controlling factor under Art. 5512, Vernon's Ann.Civ. St., and that cross fences or partition fences should be disregarded in applying said statute. If only the outside fence be considered here, the lands sued for were enclosed with more than 5000 acres owned or claimed by appellants; if inside or cross fences are considered, the lands sued for were not enclosed with as many as 5000 acres owned or claimed by appellants.

This question has been authoritatively settled adversely to appellee in the case of Howard's Unknown Heirs v. Skolant, Tex.Civ.App., San Antonio, 162 S.W. 978, writ ref. It is true that the same Court of Civil Appeals held just the contrary in Vergara v. Kenyon, 249 S.W. 514, in which case the Supreme Court granted a writ of error because of the conflict, but ultimately decided the case upon other grounds and expressly refused to settle the conflict of decisions but significantly noted that, "we will only say that the Supreme Court refused a writ of error in the Skolant Case." Tex.Com.App., 261 S.W. 1009, 1010.

■ We, therefore, hold that the trial court erred in concluding that Art. 5512, supra, barred appellants' right of recovery under the facts of this case.

This suit was filed June 12, 1948, and the jury having found that Rufus Whiteside did not commence claiming the 40 acres as his own until the year 1936, the court found, as reflected by his second legal conclusion set out above, that there was no evidence that appellants and their predecessors in title had held peaceable and adverse possession of the forty acres for any ascertainable period of time since 1939.

The year 1939 is specified because in that year Rufus Whiteside leased the ranch to one Charlie Cave. It is undisputed that Rufus Whiteside moved on the ranch in 1899 and that he continuously lived there for more than forty years, during all of which time the ranch, including the forty acres in suit, was under fence and was used for grazing and ranching purposes. Rufus Whiteside was blind several years before his death in 1942.

■ The evidence as to use and occupancy of the forty acres after 1939 is not as fully developed as this record indicates it might have been, but we are not in accord with the finding of the trial court that there is no evidence of peaceable and adverse possession for any ascertainable period of time subsequent to 1939.

Appellant Mrs. Whiteside testified that she paid taxes on the forty acres from 1937 to date of trial; that she had lived on the ranch from 1908 until about one year before Mr. Whiteside died, the ranch then being leased to Charlie Cave who entered on the ranch and took possession, and that the ranch at the time of trial was leased to Mr. Cave; also, " * * * my real home is the ranch, it has never been anything but home, but since I have got it leased and the other fellow is running it, why, wherever I am at I call my home * * *." Quoting further from Mrs. Whiteside: "When we leased the ranch to Charlie Cave; however I still own one horse that we raised on the ranch and it is still out there. * * * we begin to buy back when the war was over, things got real high and we started buying back and didn't sell out until Mr. Whiteside went blind, and I couldn't take care of him and the ranch, so I sold them out and leased the land to Charlie Cave who has it at the present time and will have it another year."

Mr. I. H. Devoll, a witness for appellee, testified that one fence had been built on the ranch since Mr. Cave went there.

In our opinion the above testimony was some evidence of adverse and peaceable possession of the forty acres by appellants through their tenant Cave from 1939 until institution of the suit, and the trial court

732

therefore erred in disregarding the verdict of the jury and rendering judgment for appellee.

The record does not show that appellants' motion for a directed verdict was called to the attention of or ruled upon by the trial court. We have, however, considered such motion and are of the opinion that it should have been denied.

Charlie Copland testified he knew Rufus Whiteside and his ranch since 1899; that Mr. Whiteside had made various improvements on the place, and had been in continuous possession of the ranch "at all times." The witness had never heard of any other person claiming any part of the ranch and testified that he knew of his "own knowledge" that Mr. Whiteside claimed the ranch "all the time."

I. H. Devoll, a witness for appellee, testified, in substance, the same as Mr. Copland, except that in answering a question as to Mr. Whiteside claiming the ranch replied: "I don't know, I guess he did, he just claimed it as his place."

Sheriff Paul Good, after being asked if Mr. Whiteside claimed all the land in the ranch, answered, "Judge, I don't know, I just know—I guess he did, he paid taxes on it."

J. W. Wilson was asked, "Did Rufus Whiteside claim all the land in his pasture there?" And replied, "I guess he did; he had it all under fence."

These were the only non-interested witnesses who testified.

The evidence also shows that Mr. Whiteside had no deed to and had not bought any part of Sec. 287, the section in which the involved forty acres lies, and that about 12 years before this suit was tried he permitted a neighbor to fence out forty acres of this section. Also is shown the fact that the Whitesides did not commence paying taxes on the forty acres in suit until 1937, this being done by Mrs. Whiteside after she assumed charge of his affairs.

These latter circumstances have a bearing on the controlling factor of the intent of Mr. Whiteside in possessing and using the lands in suit. As to payment of taxes see Manning v. Standard Oil Co. of Kan-

sas, Tex.Civ.App., Beaumont, 67 S.W.2d 919, writ dis.

The jury found that all of the elements of adverse possession did not commence until 1936. This finding is supported by the evidence and hence precludes the possibility that limitation title had been perfected prior to such time.

We have set out the substance of the evidence of adverse possession subsequent to 1939, and while we have held it sufficient to prevent the rendition of a judgment notwithstanding the verdict, we are definitely of the opinion that it is not of such a conclusive nature as to have warranted the trial court in directing a verdict for appellants.

 Our duty is not to reverse and remand the case generally, but to reverse and remand with instructions to the trial court to overrule appellee's motion for judgment and to complete trial of the case. Johnson v. Woodmen of the World Life Ins. Soc., Tex.Civ.App., Austin, 203 S.W.2d 331, and authorities there cited. It is so ordered.

Reversed and remanded with instructions.